ALFRED HOMER KEETON V. THE STATE.

No. 23200.  Delivered November 14, 1945.
Rehearing Denied December 19, 1945.

28

The opinion states the case.

*J. E. Vickers* and *W. W. Campbell, both* of Lubbock, for appellant.

*Burton S. Burks,* District Attorney, and *Crenshaw, Dupree & Milam,* all of Lubbock, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was charged by indictment with the offense of rape by force. The jury returned a verdict finding him guilty and assessing a penalty of twenty-five years.

Ruth Jameson, the prosecuting witness, testified that she entered the West Texas Technological College at Lubbock in September of 1944. A few days prior to the 23rd day of February, 1945, she met and became acquainted with appellant. She was with a man who was registered for the night at the Motor

Inn. Two other couples were present in the same cabin when she met appellant. On Sunday night following she had a date with him and went to a sandwich shop where they ate and danced for a while, and then went to the theater. On the Friday night following, which was February 23rd, the date of the alleged offense, appellant called for her in a laundry delivery truck. They first went to a place where the appellant said he had some friends but found they had moved. They went to another place and bought a quart of whisky. From there they went to the Motor Inn., Cottage No. 19, where they found Mr. Bumpass, a man of family, and Mrs. Ledbetter, both of whom worked for the same laundry that appellant was with. Both Bumpass and Mrs. Ledbetter were strangers to the witness but she soon found that Bumpass was from her home town and she had been a school mate of his son. She and appellant arrived at the Motor Inn before nine o'clock and soon secured crushed ice with some bottle drinks and began to mix these with the whisky which they drank until something like nine thirty according to her testimony but considerably later according to others. Bumpass and Mrs. Ledbetter left. The prosecutrix and appellant remained, as she said over her protest. She threatened to call a cab and appellant pretended that he had done so but immediately thereafter locked the door and proposed sexual intercourse with her, which she says she declined. He then made his demands and soon they entered into a struggle. The evidence on this subject, upon which the jury must rely to find under the court's instruction that the offense of rape was committed, that is that there was pentration, is best told by quoting the testimony from the prosecuting witness as we find it in the record. After detailing a struggle for several minutes, in which she says she became exhausted, he put her on the bed. She proceeded as follows:

"Well, I fought just as long as I could, and then I couldn't fight anymore, and then he picked me up and put me on the bed, and I still had my coat on. With reference to my pants, or undergarments, Keeton didn't do anything at that particular time. I still had them on at that time, and at that time he made an effort to have sexual intercourse with me. As to whether he penetrated my person, that is, inserted his male organ into my female organ, yes, sir, he did. He remained in that position just a minute or so, and then he took my pants off. I don't remember whether they were torn. The pants that I had on that night when I put them on they were not in a damaged condition.

"I have seen these pants, which are shown me now, and they are the pants I had on that night. As to how many places are

torn and the position, or part of the garment that is torn, the crotch is torn completely in two, and they are torn down the left side. He succeeded in removing the garment from me. Then with reference to having, or attempting to have, intercourse with me, he went ahead.

"I have been married. * * * I lived with this man seven months, and during that time I experienced sexual relations with him. I know what it means to have sexual intercourse. As to whether or not the defendant had a completed act of sexual intercourse with me, or whether it was only partial, it was only partial. I mean by that, that there was no discharge. He complained because he wasn't getting any satisfaction out of it. * * *"

Mr. D. C. Judd, testifying in behalf of the State, said that on the night of February 23rd he was connected with a machine shop almost adjacent to the Motor Inn. He was working at a late hour and during the time he heard screams of a woman. Eventually he went to the door and about that time saw a man and a woman in a cabin in the tourist court, engaged in a fight in front of an open door. He had her down on the floor and was striking her with his fist. Judd called the police, two of whom were in the vicinity and received the call by radio from the station and immediately went to the shop and, following Judd's direction, to cabin No. 19 of the Motor Inn. Both testified as to the things that followed. One policeman was stationed at the door. The other went to a window and was able to look inside through a broken slat in a venetian blind. He saw appellant astride of the prosecuting witness up near her shoulders as she lay across a bed, her feet dangling toward the floor. He detailed the statement which he heard by the appellant, as well as a plea of the prosecutrix for help. The two policemen broke open the door and went inside, pulled appellant off of the woman and took them both to the police station where appellant was placed in jail and the prosecutrix was placed in charge of a woman policeman. This police woman took her to the hotel and called the county health officer. A description of her injuries is not necessary to a decision of the question raised in the case but they gave evidence of a considerable struggle between the parties and a brutal attack made upon her, fully in accord with the statement which she gave. Both the policeman and the police woman testified to these things.

The pertinent testimony of the county health officer, as far as an issue in this case is concerned, is brought out by appellant who called him as a witness in behalf of the defendant. He

testified that he examined her and found that she was a woman who had had sexual intercourse with a man but he could not tell how long it had been. The evidence showed that prosecutrix had been married before and lived with her husband for several months, as stated by her testimony above quoted. The doctor said that where a woman has been married and has had intercourse with her husband it is ordinarily impossible to tell just when there has been penetration. He took a slide of her private parts to determine whether or not there was any semen discharged there from the male organ and found none. From this he concluded that in the event there had been a recent penetration there was not a completed act of sexual intercourse on the part of the man, in the absence of which he was unable to say that there had or had not been recent penetration of her private parts by a male organ.

Mrs. Ledbetter was called as a witness in behalf of the accused but gave no testimony pertaining to the defensive issues in this case. Neither Bumpass nor the appellant testified.

From the foregoing it appears that there is no conflicting evidence on any material issue in the case. The most seriously considered question in the case is whether or not the evidence of Ruth Jameson, as to the transaction, is of a character that would raise in the minds of the jury an issue as to penetration. After a most careful analysis of her testimony we are unable to find that there is any ground for the submission of the requested charge on the issue of assault to rape or aggravated assault.

The record in this case indicates every care and caution on the part of the court to give the accused every reasonable opportunity for defense. Certainly he was represented by diligent counsel and it appears that the evidence was fully developed on this as on every other question raised. If the penalty assessed is disappointing, only the jury can be held responsible and no appeal to this court will avail. A very ingenious argument has been presented by appellant's brief to show the impossibility of penetration at the time testified to by the prosecuting witness. She made a very positive statement, and showed herself qualified to reach the conclusion and to know what took place. The evidence of the doctor was consistent and not negative. Probably she placed herself in a very questionable position before the jury, by going voluntarily with appellant to this cabin. Her admitted conduct in being at this same place on a former oc-

casion, where she met appellant, may have been excuse enough for his proposals but, under the decisions of our court and from every standpoint of reason, the fact that she had done whatever might be surmised in company with another will furnish no legal excuse for the attack which she detailed by the appellant. Had she been in proper light before the jury it would have been possible for them, under the facts of the case, to have assessed the extreme penalty and a heavier penalty than twenty-five years would have been quite likely.

In his brief appellant has quoted at length from the testimony of the prosecutrix, sufficient of which is herein above quoted, and as a conclusion in his brief he says: "An analysis of her evidence reveals that on the direct question of *penetration*, prosecutrix, at most, merely testified that the defendant 'inserted his male organ into my female organ'." He then says "she did not specifically testify to actual penetration, as we analyze her testimony." In this conclusion we can not concur. It will be sufficient to refer to Article 1187, Vernon's Ann. P. C., and authorities discussed under Note 1. The only reasonable construction which may be given to the testimony of the prosecuting witness is that there was penetration as defined by our law, and that this completed the offense of rape, regardless of her conduct in going with appellant to the cabin, the drinking in which she indulged, or her past conduct in going to this same place with another. The jury had a right to believe her story and such facts can not be availed of as a defense to the charge made against appellant. Even if she had gone to the cabin on this occasion with appellant with the express purpose and intention of engaging with him in sexual relationship, and even though she had remained for that purpose after the other couple had left the cabin, still she had a right to change her mind and to refuse to carry out such intention or any promise relative thereto. All testimony relative to her previous associations and experience in life can have no other purpose than to bear upon her credibility as a witness before the jury. This court cannot say the jury in this case wrongfully assessed a penalty of twenty-five years in the penitentiary. This is true even though we might feel that the jury should have assessed a smaller penalty—or even found appellant not guilty.

As pertinent to both the second and third propositions, contending for a charge on a lesser offense than rape, we are in position to agree with appellant as a matter of law that "where the evidence tends to show that the defendant was either guilty

of rape, or innocent of every other class of assault, that the court is not required to charge on the lesses offenses." Further, quoting from the brief, "if the evidence raises the issue of defendant's guilt of the lesser offenses, then it is incumbent that the trial court charge thereon." Carter v. State, 51 S. W. (2d) 316; Stevens v. State, 134 S. W. (2d) 246; Enfield v. State, 250 S. W. 162; Sanders v. State, 75 S. W. (2d) 116.

As said in the Stevens case, where from a reasonable interpretation of the evidence the jury may find that only an assault to commit rape, or an assault and battery was made, it then becomes the duty of the court to submit these issues in his charge. Conversely, if no reasonable interpretation of the evidence would support such finding no complaint would lie if the court failed to submit such issues.

Appellant further complains of the introduction of evidence of one of the policemen, in which he gave a statement of appellant, made at the time he pulled him away from prosecutrix. This evidence was clearly admissible as part of the res gestae. It was made upon the first approach and at the time of the perpetration of the crime, and related to a matter so much a part of it that no distinguishment can be made—it was a part of his effort to accomplish his purpose. The prosecutrix testified to the same conduct as a part of the struggle which appellant made in forcing her submission to him and it could hardly be said to have occurred after the commission of the offense, even though enough had been done prior thereto upon which to base the charge. He was continuing his efforts. The evidence was extremely inflammatory, but this fact alone will. not exclude it when otherwise admissible.

Complaint is further made of an argument of the district attorney which the court excluded and instructed the jury to not consider. We doubt that the bill sufficiently shows the argument to be error. Even so, it stated no fact not known to the jury and was not, in our opinion, of such an inflammatory nature that the court's instruction could not withdraw it. We have searched the record and fail to find any indication that the appellant was prejudiced by the fact that he was not in the armed services, or that the argument related to him personally more than it would to any other individual on trial for crime.

Complaint is made of the admission of the evidence of D. C. Judd to the effect that he heard screams of a woman in the

vicinity of the tourist cabin occupied by prosecutrix and appellant, and especially his conclusion that it "sounded like some one in distress." One of the well considered and early cases on the subject was an opinion by Judge Hurt in Myers v. State, 39 S. W. 111. We find no decision of this court or expression from the text writers that would modify that opinion. More recently we wrote on motion for rehearing, in Lee v. State, 182 S. W. (2d) 490, at page 493, summarizing various expressions of opinion and conclusion which one may be permitted to give, and cited authorities for our conclusion. Reference to that opinion on rehearing will sufficiently dispose of the question as it appears in the instant case.

A proper bill presents objection made to the statement of Dr. Rollo, who examined the prosecuting witness some hours after the occurrence giving rise to this prosecution. He said that she "did complain to me that she had been raped." When such testimony was offered objection was made "on the ground that it was improper testimony and called for a conclusion of the witness." Apparently it was hearsay and not a conclusion of the witness. It is not a part of the res gestae but it stated a fact which was before the jury by the same witness whose evidence was quoted, and it is not denied by the statement of any witness. It could add nothing to the statement which the prosecutrix made in person on the witness stand. It could not be admitted to corroborate her testimony because that was not disputed. Its admission is excusable only because we can see no possible harm to appellant by reason of it. Many of the authorities which we have read on the subject find such evidence would not be admissible on the ground that the party quoted was not present and testifying, and in many instances they were children of such tender years that the evidence was held to be inadmissible. (See Sanders v. State, 75 S. W. (2d) 116.) Furthermore, the court instructed the jury in his main charge that they should not consider this testimony. We find no circumstance under which the evidence would make such impression on the jury that the court's charge would not erase it from their minds. In the instant case it added nothing to what had been said, as above pointed out, and therefore, was not the force which planted the facts stated in the minds of the jury in a manner so that it could not be removed.

We fail to find reversible error in the trial of this case and accordingly the judgment of the trial court is affirmed.

ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant's main contention in his motion is based upon the failure of the trial court to respond to his request to charge the jury upon the law relative to an assault to rape, as well as an aggravated assault, his contention being that there was evidence present herein bearing upon both such assaults.

Unquestionably there was evidence of a brutal assault from more than one witness, as was shown not only by the bruised condition of the body of the prosecutrix, but actual eye witnesses who saw appellant beating on her; also there was unquestionably testimony showing a penetration of the woman's private parts by appellant's private parts, and no testimony to the contrary. He was either guilty of the rape or not guilty thereof, and the violence offered prosecutrix, according to the evidence, was for the sole purpose of rape, and the same was successful, and used only for its accomplished purpose; and we think the trial court was well within its rights when it charged the jury on the law of rape alone.

It is true that an indictment for rape includes also a charge for an assault with intent to rape, as well as an aggravated assault, by virtue of the statute, Art. 695, C. C. P. Yet, such an inclusion does not necessarily mean that in all trials charging rape such other assaults must be submitted. Instead, this matter should be governed by the testimony presented, and if such testimony clearly shows that the offense proven was rape and that the violence used was only for the effectuating of such purpose, it would be a useless thing to charge upon the lesser assaults, although they, of necessity, had to appear in the testimony in order to make up the proof of the greater offense. It may at times become the duty of the court to charge upon such lesser assaults where there is some doubt thrown on the completed offense, or where the testimony offered may fall short of a completed attack, or when any controversy might have arisen relative to such facts. No controversy appears, however, in this case. The appellant did not take the witness stand. The prosecutrix testified that he penetrated her parts; no doubt thereof, that she had been married and knew what such meant. Under these facts, we do not see upon what grounds the trial court could base a charge of an assault short of the act of rape.

Being so convinced the motion for rehearing is overruled.