**William Benton HUGHES, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 05–86–00096–CR.**

Court of Appeals of Texas,
Dallas.

April 7, 1987.

Discretionary Review Refused July 1, 1987.

Brenda G. Christian, Dallas, for appellant.

Pamela K. Sullivan, Dallas, for appellee.

Before STEPHENS, HECHT and McCRAW, JJ.

McCRAW, Justice.

William Benton Hughes appeals the order revoking his probation. Punishment was assessed at three years in the Texas Department of Corrections. Appellant contends that the trial court abused its discretion in revoking his probation because the evidence of delivery of a dangerous drug is insufficient to support the revocation. We disagree. Consequently, we affirm the judgment.

Appellant was convicted of felony theft on March 10, 1983, and was placed on probation for ten years. Pam and Thomas Staley testified that a friend introduced them to appellant in March 1983. Appellant was introduced to Pam as a medical doctor, although he later admitted that he was not a doctor. Appellant represented to the Staleys that he was working on a cure for cancer and was trying to get funds to mass produce and secure approval of the cure. The Staleys donated $15,000 toward the cancer research.

Pam testified that in November 1983 Thomas informed appellant that she was sick with a kidney ailment. Appellant said that he could prescribe something for her and brought the Staleys a computer printout showing how a kidney works and some pills inside an envelope. Pam felt the pills inside the envelope but did not look inside. She never took the pills because she had become suspicious of appellant's representations regarding different projects for which he needed funds. Pam placed the pills in a cabinet in her kitchen, where they remained until January 1985. She stated that she did not alter the contents of the envelope.

Thomas' testimony substantially corroborated that of Pam. Thomas testified that he never altered the contents of the envelope and identified the envelope in court. He said that he had become suspicious of appellant but stored the pills in a secure area because he kept thinking that the cancer research program might really exist. In January 1985, Thomas turned the pills over to chief felony prosecutor Cheryl Jerome at the district attorney's office. He did not see the envelope again until trial.

At trial, Jerome identified the plastic sleeve in which she had placed the envelope. Jerome turned the file, containing the sleeve with the envelope, over to Jim Stanton, another assistant district attorney, who took it to forensic sciences. Don Hatchett, a chemist, identified the three tablets in the envelope as parafon forte. He stated that he tested one tablet and that it contained acetaminophen and 245.4 milligrams of chlorzoxazone. Hatchett also stated that chlorzoxazone requires a prescription.

Appellant testified that he only gave Pam non-prescription calcium pills. He placed the pills in a white envelope and had never seen the brown envelope introduced at trial. Appellant admitted that he was never a doctor but that he could have told some people that he was a doctor and that he had "a problem" for which he had since gotten care from a psychiatrist. Appellant testified that he delivered the pills to the Staleys just a few months after he pleaded guilty to felony theft and was placed on probation.

Appellant argues that the trial court abused its discretion in revoking appellant's probation because the prosecution did not prove by a preponderance of the

evidence that a violation of the terms of his probation had occurred. First, he contends that the State did not prove that he delivered a dangerous drug because the Staleys could not identify the contents of the envelope that allegedly contained the dangerous drug that appellant delivered to them. Second, he argues that the State failed to prove that chlorzoxazone was a dangerous drug.

The standard of proof in a probation revocation proceeding is by a preponderance of the evidence. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex.Crim.App. 1984). On review of such a proceeding, we are limited to the question of whether the trial court abused its discretion in revoking appellant's probation. *Id.* The trial court is the sole judge of the facts, the credibility of witnesses, and the weight to be given their testimony. *Morris v. State*, 658 S.W.2d 770, 772 (Tex.App.—Beaumont 1983, no pet.); *see Houlihan v. State*, 551 S.W.2d 719, 723 (Tex.Crim.App.), *cert. denied*, 434 U.S. 955, 98 S.Ct. 481, 54 L.Ed.2d 313 (1977). Therefore, the trial court could have believed that appellant gave Pam Staley tablets in an envelope, that the Staleys kept the envelope unaltered in their kitchen cabinet from November 1983 until January 1985 when they delivered it to Jerome at the district attorney's office, that Jerome gave it to Stanton, and that Stanton gave the envelope to Hatchett, who identified it as a prescription drug. There was no break in the chain of custody. *See Tardiff v. State*, 548 S.W.2d 380, 383 (Tex.Crim. App.1977); *Alexander v. State*, 629 S.W.2d 776, 780 (Tex.App.—Dallas 1981, no pet.). The preponderance of the evidence supports the allegation that appellant delivered the dangerous drug to the Staleys.

We next review appellant's contention that the State did not prove that chlorzoxazone is a "dangerous drug." Chlorzoxazone is not a dangerous drug listed in Penalty Groups I through IV of the Texas Controlled Substances Act. *See* TEX.REV. CIV.STAT.ANN. art. 4476–14, § 2(a) and art. 4476–15, § 4.02(b)–(e) (Vernon Supp. 1987). Nevertheless, this is not the exclusive way to determine whether a drug is a "dangerous drug." Under section 2(a)(2) of the Dangerous Drug Act, a dangerous drug includes any drug that is not included in Penalty Groups I through IV which is required to bear the legend: "Caution: federal law prohibits dispensing without prescription." TEX.REV.CIV.STAT.ANN. art. 4476–14 (Vernon Supp.1987).

The court of criminal appeals has long recognized, with regard to indictments for possession or delivery of dangerous drugs, that a dangerous drug has been defined as "any drug or device which bears the legend: Caution: federal law prohibits dispensing without prescription...." *Parrish v. State*, 614 S.W.2d 161, 162 (Tex.Crim. App.1981); *see also Ex parte Smith*, 692 S.W.2d 518, 519 (Tex.Crim.App.1985); *Crockett v. State*, 511 S.W.2d 519, 520 (Tex.Crim.App.1974). In this case, the assistant district attorney introduced an affidavit from the "Desk of Human Resources," Food & Drug Administration, which recites that chlorzoxazone is required to bear the legend, "Caution: Federal law prohibits dispensing without prescription." We hold that the contents of this affidavit prove that chlorzoxazone is a dangerous drug under section 2(a)(2) of the Dangerous Drug Act. *See Ex parte Charles*, 582 S.W.2d 836, 837 (Tex.Crim. App.1979).

Although this affidavit does not appear in our record, the assistant district attorney properly placed the facts in the record by his statements explaining the contents of the affidavit. *Canada v. State*, 660 S.W.2d 528, 530 (Tex.Crim.App. 1983); *see also Hicks v. State*, 525 S.W.2d 177, 179–80 (Tex.Crim.App.1975). Appellant's trial attorney did not object to the statements of the assistant district attorney. The record was approved by the trial court. Thus, the record affirmatively establishes the contents of the affidavit. *See Canada*, 660 S.W.2d at 530. Therefore, the State proved by a preponderance of the evidence that chlorzoxazone is a dangerous drug. The trial court did not abuse its discretion in revoking appellant's proba-

tion. We overrule appellant's sole point of error.

The judgment is affirmed.